UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIDIA HERNANDEZ ANCELMO,<br>Petitioner,<br>v.<br>POLLY KAISER, et al.,<br>Respondents. | No. 1:26-cv-05579-DJC-CSK<br><br><u>ORDER</u> |

Petitioner Lidia Hernandez Ancelmo was a non-citizen in the custody of Immigration and Customs Enforcement ("ICE") when this action was first filed on July 18, 2026. In the ensuing three weeks, Petitioner was removed from the country in direct violation of both federal law and this Court's order, left in Southern Mexico without identification, money, or method of communication with her family. She was then forced to effectuate her own return to the United States, despite this Court's clear order that Respondents were to facilitate her return. Presently before the Court is Petitioner's Motion to Compel Return and for Entry of Default in which Petitioner seeks to compel Respondents to facilitate Petitioner's return as previously ordered. (ECF No. 17.) The Court previously held a hearing on this motion, at the conclusion of which the Court granted the Motion on the record. (*See* ECF No. 24.)

For the reasons stated below, the Court now issues this written order reaffirming that decision and imposing compensatory sanctions on Respondents for failure to comply with this Court's orders.

## BACKGROUND

On July 18, 2026, Petitioner filed a Petition for Writ of Habeas Corpus. (ECF No. 1.) In the Petition, Petitioner sought release from custody largely based on the conditions of Petitioner's confinement. Consistent with its practice in the hundreds of other immigration detention cases filed before the undersigned, the Court ordered Respondents to submit a return to the Petition pursuant to 28 U.S.C. § 2243 on or before July 23, 2026. (ECF No. 4.) On July 22, 2026, before Respondents' return was filed, Petitioner filed an emergency Motion for Temporary Restraining Order at 2:15 P.M. (ECF No. 5.) Therein, Petitioner claimed that she had been informed that the Department of Homeland Security ("DHS") intended to remove her from the United States imminently. (*Id.* at 2.) Petitioner further claimed that any such removal was "patently unlawful" as Petitioner's removal order had been appealed and was thus not final. (*Id.*)

In order to maintain jurisdiction while the Court assessed the claims raised in the Motion for Temporary Restraining Order, the Court issued a minute order administratively staying Petitioner's removal and ordering Respondents to file a response to the Motion. (ECF No. 6.) That order was issued on July 22, 2026, at 5:33 P.M., three hours and eighteen minutes after Petitioner filed the Motion. Despite the Court's express order, Petitioner was removed to Mexico the following morning. (*See* ECF No. 7 at 2.)

On July 23, 2026, Respondents filed a response stating that Respondents' Counsel, Special Assistant United States Attorney ("SAUSA") Sean Davis, had transmitted the Court's Order to ICE Enforcement and Removal Operations ("ERO") on July 22, 2026, at 5:58 P.M., but that Petitioner had nevertheless been removed "while the Court's order administratively staying removal was in effect[.]" (*Id.* at 1–2.)

Respondents represented to the Court that they were "working on coordinating Petitioner's return." (*Id.* at 1.) The response further went on to argue for dismissal of the underlying Petition on several grounds. Notably, the response's recitation of the factual background strongly implied (if not outright suggested) that Petitioner's appeal to the Board of Immigration Appeals ("BIA") had been dismissed and that Petitioner's removal – while still a violation of the Court's Order – was otherwise lawful. The Court here reproduces the full factual background section with emphasis added to the representations made regarding the status of Petitioner's appeal of her removal order:

> Petitioner is a native and citizen of Mexico. Ex 1. On March 6, 2026, the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO) took custody of Petitioner for the pendency of removal proceedings. *Id.* On June 10, 2026, an immigration judge ordered Petitioner removed. Ex. 2. On July 7, 2026, this Court denied Petitioner's first habeas petition, finding she was subject to mandatory detention. Ex. 3. **On July 16, 2026, the Board of Immigration Appeals (BIA) issued a notice that Petitioner's appeal was rejected. Ex. 4.** On July 18, 2026, Petitioner filed the present petition. ECF No. 1.
>
> On July 22, 2026, Petitioner filed a motion for a temporary restraining order. ECF No. 5. On the same date at 5:35 PM, the Court issued an order administratively staying Petitioner's removal pending resolution of the motion. ECF No. 6. At 5:58 PM, undersigned counsel for Respondents sent the order to ERO. Early in the morning of July 23, 2026, ERO removed Petitioner to Mexico. Respondents are working on coordinating Petitioner's return.

(*Id.* at 1–2.) No further clarification of the status of Petitioner's removal order or her appeal to the BIA was provided in the Government's response.

As Petitioner had been removed over a court order staying her removal, the Court ordered Respondents "to facilitate Petitioner's return to the United States on or before July 31, 2026." (ECF No. 12.) Based on the suggestion that Petitioner's appeal

had been rejected and that Petitioner's removal was thus otherwise consistent with federal law, the Court ordered Petitioner to file a Reply. (ECF No. 8.) Petitioner responded that Petitioner's initial appeal was timely filed and confirmed that it was later rejected on July 16, 2026. (ECF No. 10 at 6.) But Petitioner also noted that the BIA rejection was based on the denial of a fee waiver request and thus included a fifteen-day cure window. (*Id.*; *see also* ECF No. at 1.) Petitioner also provided documentary evidence that, on the same day the rejection was issued, Petitioner had paid the filing fee and refiled her appeal. (*Id.*; *see* ECF No. 10–2 at 1–2.)

When Respondents were prompted to file a surreply, they confirmed that "[t]he fifteen-day cure period would seem to constitute part of the time allotted for an appeal[,]" and that a removal order does not become final until "the time allotted for an appeal expires and no appeal has been made." (ECF No. 16.) Given the cure period would have run well beyond July 23, 2026, when Petitioner was removed, and that Petitioner apparently filed a cured appeal on July 16, 2026, the Court understands Respondents' statements as a concession that the Government unlawfully removed Petitioner without a final order of removal when it removed Petitioner to Mexico on the morning of July 23, 2026.

On August 3, 2026, Petitioner filed the present Motion. (Mot. (ECF No. 17).) Petitioner noted that, despite the Court's Order that Respondents facilitate Petitioner's return by July 31, 2026, Petitioner had not yet been returned to the United States. (*Id.* at 3.) According to counsel, Petitioner had been informed by ICE agents that they would not provide any assistance in enacting her return beyond the United States border. (*Id.* at 4.) Indeed, ICE agents allegedly told Petitioner that she needed to make her own arrangements to travel from near the Mexico-Guatemala border – where she had been left by the United States Government – to the U.S.-Mexico border where she would then be processed back into the United States. (*Id.*)

The Court held a hearing on Petitioner's Motion the following day. (ECF No. 21.) At the conclusion of that hearing, the Court granted Petitioner's Motion, directed

Petitioner's Counsel to facilitate Petitioner's return to the United States border, and ordered Respondents to reimburse Petitioner for reasonable costs incurred as a sanction for Respondents' failure to comply with the Court's Order that they facilitate Petitioner's return. (*Id.*) Petitioner has now filed a notice informing the Court and parties of the costs that Petitioner incurred in traveling to the United States border. (ECF No. 23.)

## LEGAL STANDARD

"Federal courts possess certain 'inherent powers,' . . . 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)). "That authority includes 'the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)). "A district court may, among other things, dismiss a case in its entirety, bar witnesses, exclude other evidence, award attorneys' fees, or assess fines." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1088 (9th Cir. 2021). "When acting under its inherent authority to impose a sanction, as opposed to applying a rule or statute, a district court must find either: (1) a willful violation of a court order; or (2) bad faith." *Id.* at 1090. Where a Court imposes a compensatory sanction — which is to say a sanction that strictly "redresse[s] the wronged party 'for losses sustained'" and is "calibrated to the damages caused by the sanctionable conduct" — the Court applies a "but-for" causation standard to decide whether sanctions are available. *Id.* at 1089. Through this test, the Court determines whether "but for the sanctionable misconduct, would there be any harm warranting compensatory relief[.]" *Id.* at 1089–90.

## DISCUSSION

Consistent with its order at the close of the hearing, the Court finds that civil sanctions are warranted to compensate Petitioner for the harm that resulted from Respondents' willful violation of the Court's Order.

It is functionally undisputed that Respondents have violated the Court's order that Respondents facilitate Petitioner's return.[1] The Court unambiguously ordered Respondent "to facilitate Petitioner's return to the United States on or before July 31, 2026." (ECF No. 12.) It is also undisputed that, as of the August 4, 2026 hearing, Respondents had not taken any actions to facilitate Petitioner's return from her current location to the United States border.[2] In fact, the ICE agents who contacted Petitioner may have even taken actions that impeded this Court's Order. While the Court makes no finding on this point, Petitioner alleges that the ICE agents who contacted her did not attempt to facilitate her return and instead sought to actively discourage her from returning to the United States.

There is also no meaningful dispute that the violation of this Court's Order was willful. At hearing on this Motion, SAUSA Davis confirmed that ICE would not provide any transportation, funding, or other assistance to facilitate Petitioner's return beyond the United States border. Davis referenced the possibility that barriers existed which would prevent the Department of Homeland Security from securing transportation or otherwise facilitating Petitioner's return, though he was unable to identify any beyond dismissively stating that the Government could not simply "Venmo" the Petitioner for the cost of a flight. Respondents also argued that on July 31, 2026, Petitioner had told ICE agents on the phone that she did not wish to return but also stated that she wanted to speak to her lawyer. Based on this communication, Respondents suggested they could not facilitate Petitioner's return as she wished to remain in Mexico. The facts in this regard are in some dispute, but Petitioner's Counsel represented that she had spoken to Petitioner the night before the hearing and

---

[1] Petitioner's initial removal from the United States was also a violation of this Court's order. However, the Court does not make any finding at this time that such removal was willful or that it warrants sanctions.

[2] The only action taken by the Government appears to have been making telephonic contact with Petitioner. Without more, speaking with Petitioner on the phone cannot be considered facilitating Petitioner's return.

confirmed with Petitioner that she wanted to return to the United States. When the Court accepted Petitioner's Counsel's representation, the Government continued to maintain the position that it still could not, or would not, facilitate Petitioner's return beyond the United States border. It is also notable that, despite the Court setting a July 31, 2026, deadline for Respondents to facilitate Petitioner's return, that deadline passed without the Government providing any update to the Court. It was only once Petitioner's Counsel filed the present motion, and the Court set a hearing on that motion, that the Government provided information as to Petitioner's status or the Government's efforts (or lack thereof) to facilitate Petitioner's return. The fact that Respondents have deliberately decided not to facilitate Petitioner's return to the United States border, in direct violation of this Court's Order, is sufficient to establish a willful violation, regardless of Respondents' intent or improper motive. *Am. Unites for Kids*, 985 F.3d at 1090.

Having found a willful violation of the Court's Order, the Court turns to whether, but for the sanctionable misconduct, there was any harm warranting compensatory relief. The answer here is obviously yes. Petitioner's Counsel represents that it cost $568.69 in travel, food, and lodging costs to transport Petitioner to the United States border.[3] (*See* ECF No. 23 at 3.) Had Respondents actually facilitated Petitioner's return as ordered, Petitioner would not have incurred costs in transporting herself to the United States border. It was only Respondents' refusal to provide Petitioner with any assistance in remedying the Government's own error that caused this necessary step. But for the Government's complete failure to comply with the Court's order, this harm would not have been suffered. The Court thus finds that compensatory

---

[3] Petitioner's calculation is based on the cost of an identified flight and what appears to be a conservative estimate of food and lodging expenses. Given it seems likely that Petitioner's costs exceeded this total amount and the reasonableness of the estimates, the Court finds that this amount is sufficiently calibrated to the damage to compensate Petitioner for the harms incurred without imposing any punitive sanction.

sanctions in the amount of $568.69 are warranted to compensate Petitioner for the harm caused by Respondents' violation of the Court's Order.

The Court wishes to also expressly acknowledge and restate here that the Government's conduct in this case has been deeply troubling. It is now undisputed that Petitioner was unlawfully removed from the United States without a final order of removal. That removal was also a direct violation of this Court's administrative stay order. Despite being directly faced with this error, Respondents did not take any meaningful steps to remedy it, even though the Court has also expressly ordered such actions be taken. In fact, based on the representations made by Petitioner, some ICE agents had even actively taken steps to see that it is not remedied by attempting to dissuade Petitioner from returning at all. While the Court appreciates that Respondents have now returned Petitioner to the United States (*see* ECF No. 29), it should not require multiple hearings and orders to compel Respondents to return an individual who had been illegally removed from the country, especially where that removal was in violation of an express court order.

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that Petitioner's Motion to Compel Return (ECF No. 17) is GRANTED. Respondents are ordered to pay Petitioner $568.69 in compensatory sanctions for their violation of this Court's order that Respondents facilitate Petitioner's return to the United States.

IT IS SO ORDERED.

Dated: **August 19, 2026**

Daniel J. Calabretta

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE